1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STANLEY W. HILL,                    )   Case No. EDCV-06-0037 JC
                                    )
                Plaintiff,          )
                                    )   MEMORANDUM OPINION
        v.                          )
                                    )
MICHAEL J. ASTRUE,[1]               )
COMMISSIONER OF SOCIAL              )
SECURITY,                           )
                                    )
                Defendant.          )

**I.    PROCEEDINGS**

        Plaintiff Stanley W. Hill filed a Complaint on March 3, 2006, seeking

review of the Commissioner of Social Security's denial of benefits.  The parties

have filed a consent to proceed before a United States Magistrate Judge.

        This matter is before the Court on the parties cross-motions for summary

judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").[2]  The

[1]Michael J. Astrue is substituted as Commissioner of Social Security
pursuant to F.R. Civ. Proc. 25(d)(1).

[2]Plaintiff filed an amended motion for summary judgment on June 25, 2006.
Defendant filed a cross-motion for summary judgment on July 21, 2006.

1

1  Court has taken both motions under submission without oral argument.  <u>See</u> F.R.
2  Civ. Proc. 78; L.R. 7-15; March 6, 2006 Case Management Order, ¶ 5.

3       Based on the record as a whole and the applicable law, the decision of the
4  Commissioner is AFFIRMED.  The findings of the Administrative Law Judge
5  ("ALJ") regarding plaintiff's ability to perform other work that exists in
6  significant numbers in the national economy are supported by substantial evidence
7  and are free from material error.[3]

8  **II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
9  **DECISION**

10       On March 19, 2002, plaintiff filed applications for disability insurance
11  benefits ("DIB") and supplemental security income ("SSI") benefits.
12  (Administrative Record ("AR") 57, 243).  Plaintiff asserted that he became
13  disabled on November 30, 2001, due to carpal tunnel syndrome, a right wrist
14  laceration, loss of grip of both hands, loss of range of motion of right arm and
15  fingers, and degenerative changes of the right elbow.[4]  (AR 22, 57, 74, 243).  The
16  ALJ examined the medical record and heard testimony from plaintiff (who was
17  represented by counsel) and a vocational expert on April 2, 2003.  (AR 22, 313-
18  39).  On April 21, 2003, the ALJ determined that plaintiff was not disabled at any
19  time through the date of the ALJ's decision.  (AR 18-29).  Specifically, the ALJ
20  found:  (1) plaintiff suffered from the following severe impairments:  status post

21
22
23      [3]The harmless error rule applies to the review of administrative decisions
regarding disability.  <u>See</u> <u>Batson v. Commissioner</u>, 359 F.3d 1190, 1196 (9th Cir.
24  2004) (applying harmless error standard); <u>see</u> <u>also</u> <u>Stout v. Commissioner</u>, 454
25  F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of
harmless error standard in social security cases).
26
27      [4]Although plaintiff's DIB and SSI applications and the ALJ's April 21,
2003 decision reflect a disability onset date of November 30, 2001, plaintiff
28  alleged an earlier onset date of November 2000 at the hearing before the ALJ.
(AR 318).

1  right wrist laceration, degenerative joint disease of the right elbow, and carpal
2  tunnel syndrome (AR 23); (2) plaintiff's impairments taken either singly or in
3  combination, did not meet or medically equal one of the listed impairments (AR
4  23, 27); (3) plaintiff retained the residual functional capacity to perform a wide/
5  significant range of light work activities (AR 23, 28);[5] (4) plaintiff could not
6  perform his past relevant work (AR 26, 28); and (5) there were a significant
7  number of jobs in the national economy that plaintiff could perform, such as
8  information clerk and greeter at the light exertional level, and surveillance system
9  monitor at the sedentary exertional level.[6]  (AR 27, 28).  The Appeals Council
10  ultimately denied plaintiff's application for review of the ALJ's decision.
11  (AR 7-10).[7]

12
13  ───────────────────
14      [5]The ALJ indicated: (i) plaintiff could lift and carry twenty pounds
15  occasionally and ten pounds frequently; stand and/or walk for six hours out of an
16  eight hour day; sit for six hours out of an eight hour day; (ii) plaintiff was
    precluded from using right hand controls as he only had use of the forefinger and
17  thumb of the right hand; (iii) plaintiff was limited to occasional gripping, grasping,
18  and fine manipulation with the right upper extremity; (iv) plaintiff was precluded
    from climbing ropes and ladders; and (v) plaintiff was limited to occasional
19  climbing of stairs, balancing, stooping, kneeling, crouching, and crawling.  (AR
20  23, 28)

21      [6]The ALJ noted with respect to the job of information clerk and greeter at
22  the light exertional level, that 1,000 such positions existed in the regional
    economy and 25,000 such positions existed in the national economy.  (AR 28).
23  The ALJ further noted with respect to the job of surveillance system monitor at the
24  sedentary exertional level, that 500 positions existed in the regional economy and
25  15,000 positions existed in the national economy.  (AR 28).

26      [7]On March 25, 2005, the Appeals Council initially remanded for a de novo
27  hearing because the recording of the April 2, 2003 hearing testimony could not be
    located, and the record was thus incomplete.  (AR 52-54).  On September 20,
28  2005, the Appeals Council vacated the prior remand order because the missing
    recording was located.  (AR 11-13).

1    **III.    APPLICABLE LEGAL STANDARDS**

2         **A.    Sequential Evaluation Process**

3         To qualify for disability benefits, a claimant must show that he is unable to

4    engage in any substantial gainful activity by reason of a medically determinable

5    physical or mental impairment which can be expected to result in death or which

6    has lasted or can be expected to last for a continuous period of at least twelve

7    months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

8    § 423(d)(1)(A)).  The impairment must render the claimant incapable of

9    performing the work he previously performed and incapable of performing any

10   other substantial gainful employment that exists in the national economy.  Tackett

11   v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

12        In assessing whether a claimant is disabled, an ALJ is to follow a five-step

13   sequential evaluation process:

14        (1)    Is the claimant presently engaged in substantial gainful activity?  If

15               so, the claimant is not disabled.  If not, proceed to step two.

16        (2)    Is the claimant's alleged impairment sufficiently severe to limit

17               his ability to work?  If not, the claimant is not disabled.  If so,

18               proceed to step three.

19        (3)    Does the claimant's impairment, or combination of

20               impairments, meet or equal an impairment listed in 20 C.F.R.

21               Part 404, Subpart P, Appendix 1?  If so, the claimant is

22               disabled.  If not, proceed to step four.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1   (4)  Does the claimant possess the residual functional capacity to perform
2        his past relevant work?[8]  If so, the claimant is not disabled.  If not,
3        proceed to step five.
4   (5)  Does the claimant's residual functional capacity, when
5        considered with the claimant's age, education, and work
6        experience, allow him to adjust to other work that exists in
7        significant numbers in the national economy?  If so, the
8        claimant is not disabled.  If not, the claimant is disabled.

9  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
10 Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

11      The ALJ has an affirmative duty to assist the claimant in developing the
12 record at every step of the inquiry.  Bustamante v. Massanari, 262 F.3d 949, 954
13 (9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)
14 (ALJ has special duty to fully and fairly develop record and to assure that
15 claimant's interests are considered).  The claimant has the burden of proof at steps
16 one through four, and the Commissioner has the burden of proof at step five.
17 Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679
18 (claimant carries initial burden of proving disability).

19      **B.   Step Five of the Sequential Analysis**
20      If, at step four, the claimant meets his burden of establishing an inability to
21 perform past work, the Commissioner must show, at step five, that the claimant
22 can perform some other work that exists in "significant numbers" in the national

23  ────────────────

24      [8]Residual functional capacity is "what [one] can still do despite [ones]
25 limitations" and represents an "assessment based upon all of the relevant
   evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).  In determining a claimant's
26 residual functional capacity, an ALJ must consider all relevant evidence in the
27 record, including medical records, lay evidence, and the effects of symptoms,
   including pain, that are reasonably attributed to a medically determinable
28 impairment.  Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th
   Cir. 2006) (citations omitted).

economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience.[9] Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of disability with respect to exertional limitations. See Lounsbury v. Barnhart, 468 F.3d 1111, 1116 (9th Cir.), as amended (2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). If not, the ALJ must nonetheless use the grids as a framework, and also take the testimony of a vocational expert. Lounsbury, 468 F.3d at 1155; Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony

---

[9]Whether there are a "significant" number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer. Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986). See also Barker v. Secretary of Health & Human Services, 882 F.2d 1474, 1478 (9th Cir.), as amended (1989) (noting that Ninth Circuit has never established the minimum number of jobs necessary to constitute a "significant number").

suggesting greater limitations); <u>Lewis v. Apfel</u>, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job information). Although the DOT is the presumptive authority on job classifications, it is rebuttable. <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995). In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." <u>Pinto v. Massanari</u>, 249 F.3d 840, 846 (9th Cir. 2001) (quoting <u>Johnson</u>, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793 (9th Cir.), <u>as</u> <u>amended</u> (1997) (citations omitted).

## C.   Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. <u>Robbins</u>, 466 F.3d at 882 (citing <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

1    To determine whether substantial evidence supports a finding, a court must

2   "'consider the record as a whole, weighing both evidence that supports and

3   evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.

4   Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

5   953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

6   or reversing the ALJ's conclusion, a court may not substitute its judgment for that

7   of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

8   **IV.   DISCUSSION**

9          **A.     The ALJ's Determination That Plaintiff Could Work as an**

10                  **Information Clerk and Greeter Is Supported by Substantial**

11                  **Evidence**

12          Plaintiff argues that the ALJ materially erred in finding that plaintiff could

13   work as an information clerk and greeter.  More specifically, plaintiff contends

14   that the ALJ's finding that plaintiff could perform such a job constitutes a

15   deviation from the presumptively correct DOT without persuasive evidence to

16   justify such a deviation.[10]  As the ALJ's determination that plaintiff could work as

17   an information clerk and greeter is consistent with the DOT, plaintiff's argument

18   is without merit.

19          The DOT states that the occupation of an information clerk requires

20   frequent handling (from 1/3 to 2/3 of the time) and occasional fingering (up to 1/3

21   of the time).[11]  DOT 237.367-018.  The DOT does not reflect that the job requires

22   handling and fingering with both upper extremities.  Plaintiff contends that

23

24   ───────────────

25          [10]Plaintiff does not challenge the ALJ's assessment of plaintiff's residual

26   functional capacity.

27          [11]"Handling" is "seizing, holding, grasping, turning or otherwise working

     primarily with the whole hand or hands."  Social Security Ruling 85-15.

28   "Fingering" involves "picking, pinching or otherwise working primarily with the

     fingers."  Social Security Ruling 85-15.

1   because he does not have the capacity to use his right upper extremity frequently,
2   and has no ability to use his right hand controls, the ALJ's finding that he could
3   work as an information clerk and greeter is contrary to the DOT.  (Plaintiff's
4   Motion at 5).

5       Although plaintiff correctly describes the ALJ's findings regarding his
6   upper right extremity and right hand, the ALJ found no such limitations or
7   restrictions regarding plaintiff's left upper extremity or left hand.  (AR 23, 28).
8   The ALJ accurately described all of plaintiff's limitations and restrictions,
9   including the limitation regarding plaintiff's right upper extremity and hand, in the
10  hypothetical posed to the vocational expert.[12]  (AR 336).  The ALJ further
11  described the hypothetical individual as right-handed.  (AR 336).  The vocational
12  expert testified that such a hypothetical individual could do unskilled light work as
13  an information clerk and greeter and unskilled sedentary work as a surveillance
14  system monitor.  (AR 337).  As the vocational expert stated, such testimony was
15  consistent with the DOT.  (AR 337).  Based on the vocational expert's testimony,
16  the ALJ found that plaintiff could work as an information clerk and greeter and
17  surveillance system monitor.  (AR 27-28).

18      Since the ALJ's hypothetical to the vocational expert was proper and
19  complete, and since the vocational expert's testimony comported with the DOT,
20  the ALJ's reliance on such testimony, as well as the ALJ's conclusion that plaintiff

21
22
_____

23      [12]Specifically, the ALJ inquired:  "[the] hypothetical individual is limited to
24  a light range of work, with no use of hand control on the right.  The individual is
    right handed.  Only has the use of the forefinger and thumb, [INAUDIBLE for 9
25  seconds] no ropes or ladders, occasional use of stairs, occasional balancing
26  stooping, kneeling, crouching or crawling.  Only occasional gripping and grasping
    with fine manipulation with the right upper extremity.  [INAUDIBLE for 36
27  seconds].  Okay, [INAUDIBLE for 13 seconds] . . . Are there unskilled
28  occupations that could be performed either at the sedentary or the light or the
    limited light range?"  (AR 336-37).

1  could work as an information clerk and greeter, are supported by substantial
2  evidence and free from material error.[13]

3  **B.     The ALJ's Failure to Make a Finding as to Whether the Job of**
4  **Surveillance System Monitor, by Itself, Existed in Significant**
5  **Numbers in the National Economy Was Not a Material Error**

6          Based upon the erroneous premise that the ALJ erred in determining that
7  plaintiff was capable of working as an information greeter and clerk, plaintiff also
8  argues that the ALJ's failure to make a finding as to whether the occupation of
9  surveillance system monitor, by itself, existed in significant numbers in the
10 national economy  constituted material error.[14]   Since plaintiff's premise is flawed,
11 the Court rejects this argument.

12         As discussed above, substantial evidence supported the ALJ's determination
13 that plaintiff could work as an information clerk and greeter.  In light of that fact,
14 there was no need for the ALJ to assess whether the job of surveillance system
15 monitor, by itself, existed in significant numbers in the national economy.  Even if
16 such a need existed, any such error by the ALJ was necessarily harmless given the
17 Court's ruling above.

18         The Court therefore concludes that the ALJ did not materially err (if indeed
19 he erred at all) in failing expressly to find that the number of existing surveillance
20 system monitor jobs in the national economy was, by itself, "significant."

21
22
23 _____

24         [13]As defendant notes, although plaintiff was represented by counsel at the
25 April 2, 2003 hearing, his attorney neither questioned the vocational expert
   regarding the expert's testimony that plaintiff could work as an information clerk
26 and greeter, despite his right upper extremity limitations, nor challenged the
27 vocational expert's assertion that such a conclusion was consistent with the DOT.

28         [14]Plaintiff does not challenge the ALJ's assessment that plaintiff could work
   as a surveillance system monitor.

**V.     CONCLUSION**

        For the foregoing reasons, Defendant's Motion is granted, and Plaintiff's Motion is denied.

        LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  March 19, 2007

                                                        _____/s/_____

                                                        Honorable Jacqueline Chooljian
                                                        UNITED STATES MAGISTRATE JUDGE

11